1  Peter J. Bezek, SBN 102310
2  Robert A. Curtis, SBN 203870
   Justin P. Karczag, SBN 223764
3  **FOLEY, BEZEK, BEHLE & CURTIS, LLP**
4  15 W. Carrillo Street
   Santa Barbara, CA 93101
5  Telephone: (805) 962-9495
6  Facsimile: (805) 962-0722
   Email: pbezek@foleybezek.com
7         rcurtis@foleybezek.com
8         jkarczag@foleybezek.com
9  Andrew P. Owen, SBN 273343
   **THE TRIAL LAW FIRM PC**
10 800 Wilshire Boulevard, Suite 500
11 Los Angeles, CA 90017
   Telephone: (213) 347-0290
12 Facsimile: (213) 347-0299
13 Email: aowen@oslaw.com
   Attorneys for Plaintiffs
14

**Filed**

JUN 6 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

15         **UNITED STATES DISTRICT COURT**

16         **NORTHERN DISTRICT OF CALIFORNIA**

17

18 DAVID T. OSMENA and PATRICIA     Case No.  **CV12-02937**
   HOGAN-OSMENA, husband and wife,
19 and on behalf of all others similarly   **CLASS ACTION COMPLAINT
   situated,                              FOR:**
20
                                          **(1) Violation of California Business
21         Plaintiffs,                    and Professions Code § 17200** *et
                                          seq.***;**
22         v.                             **(2) Breach of Written Contract;**
                                          **(3) Declaratory Relief Under 28
23 LLOYDS TSB BANK, PLC, a bank          U.S.C. § 2201,** *et seq.***; and**
   organized and existing under the laws of
24 the United Kingdom, and DOES 1-100,   **(4) Fraudulent Concealment and
   inclusive,                            Nondisclosure**
25
26         Defendants.                    **JURY TRIAL DEMANDED**
27
28

                    **CLASS ACTION COMPLAINT**

1  **1.    NATURE OF THE ACTION**

2      1.     Upon information and belief, beginning in or around 2006, Defendant rolled

3  out a program designed to target Jumbo Loans, by offering in the United States a real

4  estate financing product referred to herein as the Convertible Currency Loan ("CC

5  Loan") which, on information and belief, were generally in large amounts, in excess of

6  $750,000.  Upon information and belief, a substantial number of loans were made in at

7  least California, Hawaii, Florida, Connecticut and New York, and were secured by real

8  property located in those States.

9      2.     The CC Loan differed from the traditional real estate loan in three key

10  respects.  First, the variable rate of interest was purportedly calculated by Defendant

11  based on a complicated definition contained in the loan documentation and was to be

12  based upon Defendant's "Cost of Funds."  Thus, the only objective criteria that would

13  determine the amount of the interest rate would be that as its costs of funds decreased, the

14  interest rate would decrease, and as it increased, the rate would increase.

15      3.     The second distinction of a CC Loan was its ability to allow the borrower to

16  take out the loan in United States Dollars, but then later, to convert the principle balance

17  of the loan to an alternative foreign currency in an existing equivalent amount based on

18  the applicable exchange rate at the time of the conversion.  Thus, if, after conversion, the

19  alternative foreign currency became more expensive as against the US Dollar, then the

20  principal amount on the loan, expressed in US Dollars, would increase accordingly.

21  Conversely, if the alternative foreign currency became less expensive, then the principal

22  amount of the loan would decrease accordingly.  The Cost of Funds interest rate would be

23  charged on the effective principal balance.

24      4.     The third key feature was protection afforded to the borrower via a principal

25  "cap" on the converted funds loan balance.  Because of the inherent risks to the borrower

26  of converting to a foreign currency for such loans, the CC Loans had a provision that

27  "capped" the principle balance of the loan at an amount not to exceed 120% of the

28                                              ii

1   original principle balance.  Thus, the risk to the borrower inherent in a CC Loan would be

2   "capped" regardless of how cheap the US Dollar became against the redenominated

3   currency, such that the borrower would never be obligated to pay a principal balance of

4   more than 20% over the original loan amount.

5       5.      However, unbeknownst to borrowers at the time when Defendant rolled out

6   the loan program it failed to disclose its practice of disregarding the capped principal

7   feature, so that when a converted loan principal exceed the capped amount, the Defendant

8   simply ignored the cap limitation.  Furthermore, Defendant would apply a Cost of Funds

9   interest rate that did not directly correlate to its true cost of funds.  And, Defendant would

10  thus charge its borrowers (a) on an amount in excess of the cap if the currency conversion

11  resulted in such an excess and (b) interest rates on both the contractually authorized

12  principal balance, and on the exceeded cap balance that exceeded its true cost of funds as

13  established at the inception of the loan, at times increasing the interest rate substantially

14  over the original interest rate.  As a result, borrowers across the country suffered financial

15  hardship, which included being required to pay excess interest and interest calculated on

16  a principal balance that exceeded the cap and thus was not owed.  On information and

17  belief, not all borrowers were able to pay the inflated amounts, and as a consequence, are

18  suffering foreclosure and the potential of deficiency judgments that far exceed their

19  contractual liability.   All of this has lead to a substantial unjust enrichment of the

20  Defendant at the considerable expense of the borrowers.

21      6.      Consequently, this is a class action brought on behalf of all persons and

22  entities who (1) entered into a CC Loan agreement with Defendant Lloyds TSB Bank,

23  PLC (Defendant), containing a provision which set forth a maximum principal sum for

24  the loan (for example "in the event the loan is redenominated, any fluctuations in the

25  value of the currency from time to time shall not result in a principal sum which exceeds

26  [a specific dollar amount]") (hereinafter the "Principal Cap Provision") and   (2) the

27  Defendant has accounted for the loan in an amount in excess of the Principal Cap

28                                               iii

1   Provision.   Plaintiffs DAVID T. OSMENA and PATRICIA HOGAN OSMENA
2   (collectively the "OSMENAS") allege, *inter alia*, violations of California state law and
3   common law for Defendant's wrongful conduct of disregarding the Principal Cap
4   Provision, thereby breaching the written contract and causing considerable damage to all
5   members of the class.  Plaintiffs bring this action in their own right and on behalf of a
6   National class as well as a California state subclass of all others similarly situated.

7        7.     All allegations made in this Complaint are based upon information and
8   belief, except those allegations that pertain to the plaintiff, which are based on personal
9   knowledge. Each allegation in this Complaint either has evidentiary support or,
10  alternatively, pursuant to Rules 8(e)(2) and 11(b)(3) of the Federal Rules of Civil
11  Procedure, is likely to have evidentiary support after a reasonable opportunity for further
12  investigation or discovery.

13

14  **2.     JURIDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**
15        8.     This Court possesses original jurisdiction over this civil action pursuant to
16  28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005.
17        9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2)
18  because the Defendant transacts substantial business within, and is subject to personal
19  jurisdiction in, this judicial district. A substantial part of the events giving rise to the
20  claims asserted herein took place in this judicial district. Venue is further proper within
21  this District and Division pursuant to 28 U.S.C. § 1391, because Defendant is an alien
22  business entity that can be sued in any District, and there is personal jurisdiction over
23  Defendant in this District
24        10.    Pursuant to Civil L.R. 3-2(c) through (e), assignment is appropriate to the
25  San Jose Division because some of the members of the proposed Class reside in the San
26  Jose Division, and because real property securing the Dual Currency Loans of some
27  members of the Class is located in the San Jose Division. Finally, because Defendant is
28                                            iv

1   an alien business entity, it can be sued in any District, making San Jose an appropriate

2   Division.  Assignment is further proper because under Civil L.R. 3-12, this case is related

3   to a pending action filed in this Division styled *Dugan v. Lloyds TSB Bank, PLC*, #12-

4   02549, and Plaintiffs will promptly seek an order administratively relating the instant

5   case to that one.

6

7   **3.**    **THE PARTIES**

8         11.    Plaintiffs PATRICIA HOGAN OSMENA - and DAVID THEODORE

9   OSMENA (the "OSMENAS") are, at all times relevant to this Complaint, individuals

10  residing in Los Angeles County at 207 Avenue F, Redondo Beach, California 90277.

11        12.    Defendant Lloyds TSB Bank, PLC ("Defendant") is a bank organized and

12  existing under the laws of the United Kingdom and maintains a branch in the city-state of

13  Hong Kong.  Plaintiffs are informed and believe, and on that basis allege, Defendant was

14  engaged in the business of originating and selling the CC Loans that are the subject of

15  this Complaint.  Defendant transacts business throughout California, and at all relevant

16  times originated and sold CC Loans throughout the United States, including California,

17  Hawaii, Florida, Connecticut, and New York.  Defendant has significant contacts with

18  California, and the activities complained of herein occurred in, among other states,

19  California. Defendant is a foreign corporation, not domiciled in the United States and has

20  no principal place of business in the United States. Nonetheless, Defendant intentionally

21  sought out business opportunities to sell its CC Loans to citizens or residents of the

22  United States and various individual states, while at the same time, attempting to apply

23  foreign law and to ignore various United States or State laws designed to protect the class

24  of persons or entities herein affected.

25        13.    Whenever in this Complaint, reference is made to any act, deed or conduct

26  of Defendant, the allegation means that Defendant engaged in the act, deed or conduct by

27  or through one or more of its officers, directors, agents, employees or representatives who

28                                              v

1    was actively engaged in the management, direction, control or transaction of the ordinary

2    business and affairs of Defendant.

3

4    **4.    PLAINTIFFS' FACTS**

5         14.    In or around mid-2007, the OSMENAS began communicating with

6    Defendant about the possibility of obtaining a loan secured by real property located at

7    207 Avenue F, Hermosa Beach, California 90277 ("Osmena Property").

8         15.    In or around August 2007, the OSMENAS took out approximately $975,000

9    in a CC Loan from Defendant secured by real property owned by the Osmenas ("Osmena

10    Property"). Attached hereto as Exhibits 1 thru 4 are true and correct copies of the CC

11    Loan Documents for these loans: Exhibit 1 is the Secured Promissory Note; Exhibit 2 is

12    the Assignment of Leases and Rents; Exhibit 3 is the Deed of Trust; and Exhibit 4 is the

13    Loan Agreement. These documents are incorporated herein by reference.

14         16.    The Secured Promissory Note (Exhibit 1) provided that if the loan was

15    redenominated from dollars to yen, the original principal amount of the loan ($975,000)

16    would not increase by more than 20% as a result of currency fluctuations:

17              "Notwithstanding the foregoing, in the event the loan is

18              redenominated, any fluctuations in the value of the currency from

19              time to time shall not result in a principal sum which exceeds One

20              Million One Hundred Seventy Thousand Dollars ($1,170,000)"

21              (Principal Cap Provision).

22         17.    The Secured Promissory Note also defined the applicable interest rate as

23    follows:

24              "[O]ne and one-half percent (1.5%) per annum above Lender's

25              Cost of Funds . . . 'Cost of Funds' is defined as the cost

26              (calculated to include the costs of complying with liquidity and

27              reserve assets requirements) in respect of any currency expressed

28                                          vi

1    as a percentage rate of funding for maintaining the loan or loans in

2    that the currency as conclusively nominated by Lender from time

3    to time" (hereinafter the "Interest Rate Provision").

4        18.    Shortly after the closing of the transaction, in accordance with the purpose of

5    the CC Loan, the OSMENAS redenominated the loans from Dollars to Yen.

6        19.    The redenomination was done in reliance on the Principal Cap Provision and

7    Interest Rate Provision in the Secured Promissory Note capping the principal balances of

8    the loans at approximately 20% of the original balances, and setting a low interest rate of

9    approximately 2%. The Defendant did not disclose its practice of disregarding the cap

10   provision when currency fluctuations caused the principal of the loan, expressed in US

11   Dollars, exceed the stated cap.

12       20.    As defined in the Interest Rate Provision, the interest rate was an amount

13   impossible for the OSMENAS to calculate.  It was set for successive three-month

14   periods, and was payable quarterly.  It began at approximately 2% per annum, but was

15   increased by Defendant to 2.56% by the time the OSMENAS made their first payment.

16   Defendant never disclosed to them how the interest rate was actually calculated.   The

17   OSMENAS paid the interest rate demanded by Defendant.

18       21.    However, Defendant's calculation of the interest rate was not consistent with

19   the provision in the Secured Promissory Note.  In fact, Plaintiffs are informed and believe

20   that the rate was calculated in the absence of good faith by Defendant from quarter to

21   quarter.

22       22.    Following redenomination by the OSMENAS, the exchange rate between

23   US Dollars and the Japanese Yen began to dramatically increase. For example, instead of

24   an exchange rate of 116 Yen per US Dollar, the cost of the Yen increased to

25   approximately 70 Yen per dollar. As a result, the Defendant, in breach of the Principal

26   Cap Provision, increased the principal sum allegedly due from the OSMENAS under

27   their CC Loan to an amount in excess of the Principal Cap Provision. At the same time,

28

1   the Defendant declared an increase in the interest rate on the OSMENA loan and did so
2   on the full amount then declared by Defendant to be owed by the OSMENAS, including
3   the amount in excess of the Principal Cap Provision.  This caused the payments required
4   to be made on the OSMENA'S loan to substantially increase, causing them serious
5   financial damage.

6       23.    A 20% increase in the OSMENAS' principal amount would yield a balance
7   of $1,175,000 as stated in the Secured Promissory Note.  However, Defendant never
8   honored the Principal Cap Provision, and instead claimed that the OSMENAS owed and
9   currently owe about $1,300,000, which is $125,000 in excess of the principal cap.

10      24.    Over the life of the loan, the OSMENAS have paid thousands of dollars in
11  excess interest on the excess amount over the $1,175,000 principal cap because of
12  Defendant's disregard of the Principal Cap Provisions.  They have also paid thousands
13  more in interest based upon Defendant's improper increases in its Cost of Funds.

14      25.    In addition, Defendant insisted that the OSMENAS increase the equity in
15  their residence, forcing them to agree to pay an extra $250 per month to "top off" the
16  loan.   The OSMENAS have lost much of the equity in their property based on
17  Defendant's disregard of the Principal Cap Provisions. As a result, the OSMENAS have
18  been injured.

19      26.    The OSMENAS have never missed a payment due on their loans, and have
20  complied with all material obligations under the CC Loan Documents.

21

22  **5.    CLASS ACTION ALLEGATIONS**

23      27.    The OSMENAS brings this action on their own behalf, and on behalf of a
24  Nationwide Class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class
25  is defined as:

26          All persons and entities that: (1) entered into a loan agreement with Lloyds
27          TSB Bank, PLC which contained a provision which set forth a maximum

viii

principal sum for the loan (e.g. "in the event the loan is redenominated, any fluctuations in the value of the currency from time to time shall not result in a principal sum which exceeds [a specific dollar amount]") (the "Principal Cap Provision"); and (2) Defendant has accounted for the loan and claimed an amount in excess of the Principal Cap Provision to be owed. (Hereinafter the "Nationwide Class.")

28.     The OSMENAS also brings this action on their own behalf, and on behalf of a California Subclass pursuant to Rule 23 of the Federal Rules of Civil Procedure. The California Subclass is defined as:

All persons and entities in the State of California that: (1) entered into a loan agreement with Lloyds TSB Bank, PLC which contained a provision which set forth a maximum principal sum for the loan (e.g. "in the event the loan is redenominated, any fluctuations in the value of the currency from time to time shall not result in a principal sum which exceeds [a specific dollar amount]") (the "Principal Cap Provision"); and (2) Defendant has accounted for the loan and claimed an amount in excess of the Principal Cap Provision to be owed. (Hereinafter the "California Subclass.")

29.     This action is brought and may be properly maintained as a class action pursuant to the provision of Rules 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3) of the Federal Rules of Civil Procedure and satisfied the requirements thereof.

30.     The members of the Nationwide Class and California Subclass are so numerous under the guidelines of Rule 23(a)(1) of the Federal Rules of Civil Procedure that joinder of all members is impracticable.   While the exact number of Nationwide Class and California Subclass members is unknown to the Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe that the Nationwide Class and California Subclass likely include thousands of members. Absent members of the Nationwide Class and California Subclass may be identified from

ix

1   records maintained by the Defendant and may be notified of the pendency of this action

2   by mail, using a form of notice similar to that customarily used in these types of class

3   actions.

4      31. Common questions of law and fact exist as to all members of the Nationwide

5   Class and California Subclass as required by Rule 23(a)(2) of the Federal Rules of Civil

6   Procedure and predominate over any questions solely affecting individual members of the

7   Class. Among the questions of law and fact common to the Nationwide Class and

8   California Subclass are:

9      (a) whether Defendant's conduct constitutes an unfair, unlawful and/or

10     fraudulent business practice under California Business and Professions Code

11     section 17200, et seq. (California Unfair Competition Law) (California Subclass

12     only);

13     (b) whether Defendant breached the loan agreement by increasing the principal

14     balance of the loan above the Principal Cap Provision set forth in the loan

15     agreement;

16     (c) whether Defendant fully and adequately disclosed to the members of the

17     Class its common practice of failing to adhere to the provision of the loan

18     agreement capping the principal balance of the loan;

19     (d) whether Defendant breached the loan agreement when calculating its "Cost

20     of Funds";

21     (e) whether the class members are entitled to the declaratory relief sought

22     herein; and

23     (f) whether the Class members have sustained damages as a result of

24     Defendant's conduct and, if so, the proper means of determining such damages;

25     32. Plaintiffs' claims are typical of the claims of the members of the Nationwide

26  Class and California Subclass under Rule 23(a)(3) of the Federal Rules of Civil

27  Procedure, as all members of the Nationwide Class and California Subclass were

28               x

---

**CLASS ACTION COMPLAINT**

1  similarly affected by Defendant's wrongful common course of conduct complained
2  herein.

3      33.    Plaintiffs will fairly and adequately protect the interests of the members of
4  the Nationwide Class and California Subclass as required by Rule 23(a)(4) of the Federal
5  Rules of Civil Procedure.    The OSMENAS are adequate representatives of the
6  Nationwide Class and California Subclass because they do not have interests that are
7  adverse to the interests of the other members of the Class. The OSMENAS are committed
8  to the vigorous prosecution of this action and, to that end, they have retained counsel who
9  are competent and experienced in handling cases against lenders and class action
10  litigation on behalf of consumers.

11     34.    A class action is superior to all other available methods for the fair and
12  efficient adjudication of this controversy under Rule 23(b)(3) of the Federal Rules of
13  Civil Procedure because:

14         (a)    the expense and burden of individual litigation make it economically
15         unfeasible for class members to seek redress other than through the procedure of a
16         class action;

17         (b)   if separate actions are brought by individual class members, the resulting
18         duplicity of lawsuits would cause undue hardship and expense to the Court and the
19         litigants by necessitating multiple trials of similar factual issues; and

20         (c)   absent a class action, Defendant likely would retain the benefits of tis
21         wrongdoing, and there would be a failure of justice.

22     35.    In the alternative, this action is certifiable under the provisions of Rules
23  23(b)(1) and/or 23(b)(2) of the Federal Rules of Civil Procedure because:

24         (a)    the prosecution of separate actions by individual class members would
25         create a risk of inconsistent or varying adjudications with respect to individual
26         class members that would establish incompatible standards of conduct for
27         Defendant;

28                                                 xi

(b)   the prosecution of separate actions by individual class members would create a risk of adjudications as to them that would, as a practical matter, be dispositive of the interests of the other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)   Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief be extended to the class members on a mandatory, class wide basis.

36.   Plaintiffs are aware of no difficulty that will be encountered in the management of this litigation that should preclude its maintenance as a class action.

**6.   CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Defendant's Violation of the Unfair Competition Law — California**

**Business and Professions Code § 17200 *et seq.***

37.   Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

38.   Plaintiffs bring this claim for relief on behalf of themselves and the members of the California Subclass.

39.   Defendant has engaged in and continues to engage in the unfair, unlawful and/or fraudulent business practices of: (1) offering and maintaining CC Loans to borrowers that contain a provision in the loan agreement that the principal balance will not exceed an agreed upon principal cap, (2) failing to make full and adequate disclosures concerning its common practice of disregarding this principal cap provision; (3) failing to make full and adequate disclosures concerning its Costs of Funds and variable interest

xii

1  rate; and (4) wrongfully demanding and calculating interest based on principal loan

2  balances above the mutually agreed upon cap.

3       40.    By engaging in the above-described practices, Defendant has committed one

4  or more acts of unfair competition within the meaning of the Unfair Competition Law, or

5  California Business and Professions Code § 17200, *et seq.*

6       41.    Defendant's practices are unfair because Defendant claims and collects

7  amounts in excess of the Principal Cap Provision and Defendant does not fully and

8  adequately disclose its common practice of disregarding the contracted for cap on the

9  principal balance of the loans, nor does it fully and adequate disclose its Costs of Funds

10 used to calculate the variable interest rate of the loans.  And therefore, they are also

11 immoral, unethical, oppressive, unscrupulous and/or substantially injurious to the

12 California Subclass members.

13      42.    Defendant's practices are fraudulent because they have deceived, and are

14 likely to further deceive, members of the California Subclass.

15      43.    Unless Defendant is enjoined from continuing to engage in these unfair,

16 unlawful and fraudulent business practices, Plaintiffs and the other California Subclass

17 members will continue to be injured by Defendant's actions and conduct.

18      44.    So as not to be unjustly enriched by its own wrongful actions and conduct,

19 Defendant should be required to disgorge and restore to Plaintiffs and each of the

20 California Subclass members all monies wrongfully obtained by Defendant as a result of

21 its unfair, unlawful and fraudulent business practices, together with interest thereon.

22

23                          **SECOND CLAIM FOR RELIEF**

24                          **Breach of Written Contract**

25      45.    Plaintiffs incorporate each and every allegation set forth above as if fully set

26 forth herein.

27

28                                      xiii

---

**CLASS ACTION COMPLAINT**

46.   Plaintiffs bring this claim for relief on behalf of themselves and the members of the Nationwide Class and California Subclass.

47.   Plaintiffs and Defendant entered into a written contract under which Defendant agreed that the principal balance of the loan would not exceed a pre-determined "cap" that was mutually agreed upon by both the Plaintiff and Defendant. The Principal Cap Provision specifically states: "Notwithstanding the foregoing, in the event the loan is redenominated, any fluctuations in the value of the currency from time to time shall not result in a principal sum which exceeds $[20% above loan amount]." Secured Promissory Note at 1.

48.   Plaintiffs and each Class member are parties to written contracts, namely the documents constituting the loan agreement, with Defendant that are uniform with respect to the provisions applicable to the claims asserted against Defendant, with the only difference being the original amount of the particular loan.

49.   Plaintiffs and each Class member have performed all conditions, covenants, and promises required to the performed on their part in accordance with the terms and conditions of the loan agreement, except to the extent such performance was excused, released or waived by the actions, conduct or agreement of Defendant.

50.   Defendant breached its contractual obligations under the loan agreement with Plaintiffs and each Class member by engaging in the practice of raising the principle of the loans above the agreed upon "cap" stipulated in the loan agreement and by charging interest on (and demanding pay-offs of) loan amounts in excess of the cap set forth in the contract.

51.   As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class members suffered damages, the exact extent of which will be determined with certainty at trial.

CLASS ACTION COMPLAINT

**THIRD CLAIM FOR RELIEF**

**Declaratory Relief Under the Declaratory Judgment Act**

**28 U.S.C. § 2201, <u>et seq</u>.)**

52.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

53.     Plaintiffs bring this claim for relief on behalf of themselves and the members of the Nationwide Class and California Subclass.

54.     An actual controversy has arisen and now exists between Plaintiffs and the Class members, on one hand, and Defendant, on the other hand, concerning their respective rights and duties in that Plaintiffs and the Class members contend that Defendant is engaging in and continues to engage in the unauthorized practices pled herein-above and offering and wrongfully demanding principal amounts in excess of the Principal Cap Provision and calculating interest based on principal loan balances above the mutually agreed upon cap, and Defendant denies same.

55.     Specifically, an actual controversy has arisen and now exists between Plaintiffs and the Class members, on one hand, and Defendant, on the other hand, concerning their respective rights and duties with respect to the Principal Cap Provisions, which reads "Notwithstanding the foregoing, in the event the loan is redenominated, any fluctuations in the value of the currency from time to time shall not result in a principal sum which exceeds $[20% above loan amount]." Secured Promissory Note at 1.

56.     Plaintiffs and the Class members believe that this provision in the loan agreement caps the principal balance that can be sought (and utilized for the calculation of interest) by the Defendant. Plaintiffs are informed and believe that Defendant does not consider this provision to cap the principal balance allegedly owed to Defendant. As a result, a judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiffs and the Class members may ascertain their rights and duties with respect to Defendant's practices.

## **FOURTH CLAIM FOR RELIEF**

### Non-disclosure

57.    Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

58.    Plaintiffs bring this claim for relief on behalf of themselves and the members of the Nationwide Class and California Subclass.

59.    Plaintiffs are informed and believe and thereon allege that Defendant failed to disclose to Plaintiffs and each member of the Class and California Subclass that its practice was to disregard the Principal Cap Provision of the Agreement.

60.    In offering the CC Loan to Plaintiffs and each member of the Nationwide Class and California Subclass, Defendant had a duty to fully disclose Defendant's intent and/or practice with respect to the Principal Cap Provision and was required to disclose that its practice was not to comply with the Principal Cap Provision of the CC Loan.

61.    Defendant violated this duty when it failed to disclose its practice of failure to comply with the provision capping the principal amount of the loan.

62.    Plaintiffs and the other Class members could not know that Defendant's practice was to ignore the Principal Cap Provison and thus were ignorant of the material facts which Defendant failed to disclose to them.

63.    As a result of their ignorance of the material facts, which Defendants failed to disclose to them, Plaintiffs, along with each member of the Nationwide Class and California Subclass, have been harmed as a result of Defendant's non-disclosure.

64.    Defendant has acted in a willful, wanton and malicious manner, in callous, conscious and intentional disregard for the interests of Plaintiff and the Class members, and with knowledge that its conduct is substantially likely to vex, annoy and injure Plaintiffs and the Class members.  As a result, Plaintiffs and the Class members are

xvi

1  entitled to recover punitive and exemplary damages against Defendant, pursuant to

2  California Civil Code section 3294, in an amount according to proof at trial.

3

4  **7.    PRAYER FOR RELIEF**

5         WHEREFORE, Plaintiffs pray for judgment as follows:

6                        **On The First Claim For Relief**

7         For an order enjoining Defendant from engaging in the practice of disregarding the

8  contracted for cap on the principal balance of its variable interest, variable currency

9  loans.

10        For disgorgement and restitution to Plaintiffs and each California Subclass member

11 of all monies wrongfully obtained and retained by Defendant; and

12        For interest on the monies wrongfully obtained from the date of collection of the

13 unauthorized charges through the date of entry of judgment in this action.

14                        **On The Second Claim For Relief**

15        For compensatory damages in an amount according to proof at trial; and

16        For prejudgment interest commencing on the date of collection of unauthorized

17 payments.

18                        **On The Third Claim For Relief**

19        That this Court declare that Defendant's practice of disregarding the contracted for

20 cap on the principal balance of its variable interest, variable currency loans is unjust,

21 unreasonable and unlawful.

22                        **On The Fourth Claim For Relief**

23        For special damages according to proof, all in a sum to be determined at

24 time of trial;

25        For general damages according to proof, all in a sum to be determined at

26 time of trial;

27

28                                      xvii

1         For other economic and consequential damages according to proof, all in a
2    sum to be determined at trial; and
3         For punitive and exemplary damages according to proof;
4    **On All Claims For Relief**
5        For prejudgment interest;
6        For all attorneys' fees, expenses and recoverable costs reasonably incurred in
7    connection with the commencement and prosecution of this action; and
8        For such other and further relief as the Court deems just and proper.
9
10   **<u>JURY DEMAND</u>**
11       Plaintiffs demand a trial by Jury for all issues which may be so resolved.
12
13   DATED this 5th day of June, 2012
14
15       **FOLEY BEZEK BEHLE & CURTIS, LLP**
16
17        */s/Peter J. Bezek*
18       By: Peter J. Bezek
         *Attorneys for Plaintiffs*
19
20       **THE TRIAL LAW FIRM PC**
21
22        */s/Andrew P. Owen*
23       By: Andrew P. Owen
         *Attorneys for Plaintiffs*
24
25
26
27
28